## · CHARLESTOWN.

### EXCHANGE BANK OF VA. *v.* HORNER.

Submitted June 24, 1885.—Decided September 19, 1885.

1. The plaintiff in an execution may, by notice and motion under the provisions of sec. 35 of ch. 19, of the Acts of 1881 obtain judgment in the circuit court, to which, or to the clerk's office of which, such execution is returnable against an officer, although such officer may reside in a county different from that for which said court is held. (p. 443.)

2. In such proceeding the plaintiff may recover in any case, where the return of the officer on the execution shows, that the plaintiff would be entitled to recover from such officer money in any form of action. (p. 444.)

3. When the return shows that the officer had levied upon certain property and that no other property was found to levy upon, the plaintiff can only recover the value of the property so levied at the time it ought to have been sold by the mandate of the writ. (p. 446.)

The opinion of the Court sufficiently states the facts of the case.

*J. M. Bennett* for plaintiff in error.

*John Bassel* for defendant in error.

SNYDER, JUDGE :

This was a proceeding by the Exchange Bank of Virginia against James D. Horner, sheriff of Harrison county upon notice in the circuit court of Lewis county under sec. 35 of ch. 19, Acts of 1881. The notice states, that the plaintiff caused a writ of *fieri facias* to be issued from the office of the circuit court of Lewis county in its name against Caleb Boggess and John R. Boggess for $1,646.00 with interest and costs, which writ came to the hands of the defendant and he returned the same endorsed as follows: "Levied the within execution, August 27, 1881, on one law library, consisting of 300 volums as the property of Caleb Boggess. No other property found on which to levy this execution;" that then the plaintiff caused a writ of *venditioni exponas* to issue from said office

directed to the defendant, commanding him to sell the property so levied upon by him, which writ the defendant returned and endorsed his return thereon in these words: "Notice having been served upon me by one R. S. Allen claiming to be the owner of the judgement of Exchange Bank of Virginia v. Caleb Boggess and J. R. Boggess and forbidding me to sell the property levied upon, and I having required bond, and no bond having been given to indemnify me by J. M. Bennett who claims the right to control the judgment, I have returned this *venditioni*;" and then after stating that by reason of the failure of the defendant to sell said property the plaintiff is entitled to recover from him by action the full amount of the judgment mentioned in said writ, it notifies the defendant that, on the first day of the next term of the circuit court of Lewis county, from the clerk's office of which said writ issued, the plaintiff will demand judgment in said court against the defendant "for the principal and interest and costs in said writ mentioned with interest on the aggregate thereof at the rate of fifteen *per centum per annum* thereon from the return day of said writ until payment and costs," &c.

The parties appeared, and on the motion of the defendant the court, on March 17, 1882, quashed the said notice upon the ground that the return of the defendant set out therein was not such a return as would authorize any judgment by motion in that court, and dismissed the plaintiff's motion with costs; and thereupon the plaintiff obtained this writ of error.

It is argued for the defendant in error, that a sheriff or other officer is not to be compelled to defend an action out of his own county instituted in this summary manner, unless the return is of such a character as to show he is liable for a *certain sum of money ;* and that where the recovery must be for a sum not fixed by the return or for damages, this proceeding will not lie, citing, *Chapman* v. *Chevis*, 9 Leigh. 297, and *Stone* v. *Wilson*, 10 Grat. 529.

These decisions and others in the Virginia reports are all founded upon the provisions of sec. 48, of ch. 134, Code of 1819, which in terms limits the proceedings under it to such return upon the execution "as would entitle the plaintiff to recover from such sheriff, or other officer, *by action of debt,*

the debt, damages or costs in such execution mentioned." &c.

Under that statute there never was, and never could be any doubt, that to entitled the plaintiff to recover in this summary proceeding by notice, the return must show that the officer was liable for a fixed and *certain sum*, or one that could be made certain by a simple calculation, because for such sum only would the *action of debt* lie; and the statute expressly states that the notice provided by it can be used only when an action of debt could be brought for the money mentioned in the return.

It will be observed that our present statute, under which this notice was brought, uses very different and much broader terms. It provides that, "If any officer, or deputy, shall make such return upon any * * process issued by a court or clerk thereof as entitles any person to recover money from such officer *by action*, the court to which, or to the clerk's office of which, such return is made, may, on a motion on behalf of such person, give judgment against such officer * * * for so much principal and interest as would at the time such return ought to have been made be recoverable by such action with interest," &c.—Acts 1881, p. 258; Id, Code ch. 41 sec. 30.

This statute as above quoted, was first incorporated in our laws by the revisal of 1849—see Code of Virginia 1849, sec. 40, chap. 49, p. 253; but I can find no decision of the courts of Virginia or of this State construing the statute in its present form. It seems to me, however, that the marked difference in the language of this and the former statute is sufficient to justify the conclusion that the legislature intended to change the effect of the law and to enlarge the remedy authorized by it so as to make it embrace cases not only where the return of the officer showed that he was liable for a certain sum of money such as would authorize an action of debt against him, as under the old statute, but cases where the return showed such liability as would entitle the creditor in the execution to recover money against the officer in any form of action.

The words, "so much principal and interest," used in the statute and the words following these, mean, as I understand them, that the sum for which the officer is liable, whether it

be the amount of the debt, interest and costs mentioned in the execution, or damages for which he is made liable upon the face of his return, shall be ascertained and aggregated as of the date the return was, or ought to have been, made, and then interest shall be given on this aggregate from that ·time at the rate of not less than six nor more than fifteen *per cent. per annum* (at the discretion of the court) until payment, the said aggregate being the principal money mentioned in the statute. If on the trial an issue of fact arises, either party may demand a jury to try it.—Sec. 8 ch. 74, Acts 1882, p. 173.

I am not unmindful that this statute, giving as it does a summary and unusual remedy, unknown to the common law, should be construed strictly and confined to cases plainly within its terms and purpose. But I am not aware of any constitutional limitation which forbids the legislature to authorize a proceeding of this character to be brought against an officer in the county from which the execution issued, although it may be in a county different from that in which the officer resides. There being no such limitation the legislature has absolute control over the subject, and it is not for the courts to interfere with its exercise.

. If this may be regarded as a harsh and oppressive proceeding, its severity may be justified, at least, to some extent, by the necessity of the case. The credtior has sued once and obtained a judgment for his debt, the officer collects it and fails to pay it over, or otherwise fails to discharge his duty in regard to it and returns this fact upon the writ. It would seem to be not unreasonable that the officer who places himself in this position should be dealt with summarily. He does not occupy the position of an ordinary debtor, but that of an unfaithful and delinquent officer. In some cases he may not be in the wrong, but *prima facie* that is his situation and the burden is upon him to relieve himself. It is, therefore, more just that he should be brought to the county of the creditor than that the creditor should be compelled to sue him in the county of his residence. I, therefore, think the statute authorizes the remedy invoked by the plaintiff in this proceeding.

The return of the sheriff on the execution was, I think, at least, *prima facie* sufficient to show that the plaintiff was en-

titled to recover from the defendant the value of the library on which the levy had been made. That part of the return which states, that the sheriff had required of the attorney for the plaintiff an indemnifying bond, can not be regarded for any purpose, because there is no statute or law to authorize the giving of an indemnifying bond under such circumstances. The return simply amounts to the statement that the sheriff declined to execute the writ for the sole reason that one R. S. Allen, who *claimed* to be the owner of the debt, had forbidden him to sell the property. It is not even stated that Allen was, in fact, the owner of the debt, but merely that he so claimed. But if such had been the fact, it was nevertheless the duty of the sheriff to execute the writ if required by the attorney of record for the plaintiff. There does not appear to have been any endorsement on the execution to show that Allen had any interest in it, and, in the absence of such endorsement by the clerk of the court, it was the duty of the sheriff to treat the plaintiff in the writ as the party entitled to control it and not undertake to decide for himself that some other claimant had the right to control it and act upon his directions. Freem. on Ex. § 108. Under the circumstances the sheriff would not have made himself liable to the execution debtors by executing the writ, and therefore he should have obeyed its mandate and left the parties interested to resort to the court for a settlement of any disputes as to the right to control the writ or suspend its execution.

While the notice here demands, and as I think properly, the whole amount of the debt mentioned in the execution because the property levied upon may possibly have been sufficient to satisfy the whole of said amount, still, it is certain that the plaintiff would not be entitled to judgment for the whole of said debt if the property levied upon was of a value less than the whole, but only for so much as the said property was worth at the time it ought to have been sold as required by the writ, with interest thereon as provided by the statute from that time until payment.

I am, therefore, of opinion that the said judgment of the circuit court be reversed and the case remanded for further proceedings in accordance with this opinion.

REVERSED. REMANDED.